**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 10-219-DLB**

**CRYSTAL GAIL ADAMS**                                                                                       **PLAINTIFF**


vs.                                      **MEMORANDUM OPINION & ORDER**


**MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION**                                                     **DEFENDANT**

\* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Crystal Gail Adams filed an application for a period of disability and disability insurance benefits (DIB) on June 5, 2006. (Tr. 87-92). Plaintiff's earnings record shows that she had acquired sufficient coverage to remain insured through December 31, 2010. (Tr. 11). At the time of filing, Plaintiff was 37 years old and alleged a disability onset date of January 27, 2006. (Tr. 87). Plaintiff alleges she is unable to work due to major depression and anxiety. (Tr. 108). Plaintiff has a college education and past relevant work as a pharmacist. (Tr. 109, 113). She stopped working on January 27, 2006. (Tr. 108).

1

Plaintiff's claim was denied initially and again on reconsideration. (Tr. 50-53, 57-59). At Plaintiff's request, an administrative hearing was conducted via video conference on May 12, 2008 before Administrative Law Judge (ALJ) Roger L. Reynolds. (Tr. 19-47). On September 12, 2008, ALJ Reynolds ruled that Plaintiff was not disabled and therefore not entitled to disability insurance benefits. (Tr. 9-16). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 15, 2010. (Tr. 1-3).

The present action was filed on August 4, 2010. (Doc. # 1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 6, 9).

## II. DISCUSSION

**A.  Overview of the Process**

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Moreover, even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence.

*Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 27, 2006, the alleged onset date. (Tr. 11). At Step 2, the ALJ found that Plaintiff had the following severe impairments: depression, history of polysubstance dependency, diabetes and sleep apnea. (Tr. 11).

At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12). Specifically, the ALJ evaluated Plaintiff's mental impairments under Listing 12.04 (Affective Disorders) and Listing 12.09 (Substance Addiction Disorders) and concluded that Plaintiff's condition did not meet or

3

equal the necessary criteria under either listing. (Tr. 11-12).

At Step 4, the ALJ determined that Plaintiff retains the residual functional capacity (RFC) to perform a range of heavy work as defined in 20 C.F.R. § 404.1567(c). (Tr. 12). However, the Plaintiff requires a sit/stand option with no prolonged standing or walking in excess of one hour without interruption. The ALJ also found that Plaintiff is unable to climb ropes, ladders or scaffolds secondary to body habitus. (Tr. 12). Furthermore, Plaintiff cannot work around industrial hazards and requires work without frequent changes in work routine. (Tr. 12). The ALJ found that Plaintiff is limited to no more than occasional interaction (interaction defined as conflict resolution, problem solving or exchanges involving more than casual or impersonal contact) with coworkers, supervisors or the general public. (Tr. 12) Additionally, Plaintiff cannot perform work requiring detailed or complex problem solving, independent planning or setting of goals. (Tr. 14). Based upon this RFC, the ALJ concluded that Plaintiff was unable to perform her past relevant work as a pharmacist. (Tr. 15).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that Plaintiff was born on February 9, 1969 and was 37 years old, which is defined as a younger individual, on the alleged disability onset date. (Tr. 15). *See* 20 C.F.R. § 404.1563. The ALJ also found that Plaintiff has at least a high school education and is able to communicate in English. (Tr. 15). Furthermore, the ALJ found that Plaintiff had the following transferable job skills: data entry skills and the ability to understand medical records. (Tr. 15). Considering Plaintiff's age, education, work experience and residual functional capacity, the ALJ determined that a significant number of jobs exist in the national economy that Plaintiff can perform. (Tr. 15). ALJ Reynolds

therefore concluded that Plaintiff has not been under a disability within the meaning of the Social Security Act since Plaintiff's alleged onset disability date of January 27, 2006 through the date of the decision. (Tr. 16).

### C. Analysis

Plaintiff advances three arguments on appeal. First, Plaintiff argues that the ALJ erred in evaluating Plaintiff's testimony regarding her pain, symptoms and limitations. Second, Plaintiff alleges that the ALJ substituted his own opinion for that of the physicians of record. Finally, Plaintiff asserts that the ALJ erred in framing his question to the vocational expert because he failed to adequately explain the Plaintiff's mental status. Each of these arguments will be addressed in turn.

#### 1. The ALJ Properly Assessed the Credibility of Plaintiff's Testimony Relative to the Pain, Persistence, and Limiting Effects of Her Symptoms

Plaintiff argues that while ALJ Reynolds summarized the Plaintiff's testimony, he erred in failing to provide specific reasons for rejecting this testimony in violation of Social Security Ruling 96-7p. Moreover, Plaintiff asserts that her medical records, length of treatment and testimony clearly establish objective medical evidence that supports her allegations of disability. Plaintiff's argument is unpersuasive.

Credibility determinations are generally reserved for the ALJ and should not be discarded lightly. *Jones*, 336 F.3d at 476. Meaningful review, however, requires more than "blanket assertions that the claimant is not believable." *Rogers v. Comm'r Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). Social Security Rule 96-7p requires the ALJ to explain his credibility determination so that it is "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements

5

and the reasons for that weight." *Id.* The Court's review, then, is limited to determining whether the ALJ's explanations for discrediting the Plaintiff's testimony are reasonable and supported by substantial evidence in the record.

Plaintiff testified that she suffers from anxiety, major depression and addiction. (Tr. 24, 108). Furthermore, for the first time at the hearing, she complained of intense foot and ankle pain that causes her to hobble and limp if she has to stand for an extended period of time. (Tr. 32, 40). Plaintiff claims that her mental impairments cause difficulties maintaining attention and concentration, dealing with stress and dealing with other people. (Tr. 36). Plaintiff also testified that she gets upset easily and is short-tempered with others, especially children; this causes her to avoid interacting with the public. (Tr. 37-38). ALJ Reynolds, after lengthy discussion, concluded that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her "statements concerning the intensity, persistence and limiting effects" of her symptoms were "not credible." (Tr. 13).

The ALJ provided several specific reasons for not finding Plaintiff's testimony regarding her allegations of disability to be credible. First, the ALJ noted that Plaintiff is currently receiving long term disability benefits from her employer and was required by her insurance policy to file the present claim for disability benefits. (Tr. 12, 22-23). In January 2006, Plaintiff was arrested for driving under the influence after she had take three Ambien and 150 mg of hydrocodone. (Tr. 283). As a result, her employer discovered that Plaintiff had been stealing prescription drugs from the pharmacy for her own personal use, and she was forced to surrender her pharmacist license for a period of five years. (Tr. 12, 23). This was the second time in under five years that Plaintiff had to surrender her license for

6

stealing prescription drugs from an employer for her own personal use. (Tr. 23, 254). Furthermore, despite Plaintiff's reported long history of depression, she only sought psychiatric treatment as a condition for getting her pharmacist license returned. (Tr. 254). The Sixth Circuit has determined that the failure to seek mental health treatment can be considered when assessing the credibility of a plaintiff's allegations. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) (finding it significant that claimant sought no medical assistance for any mental impairment until year of application); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (recognizing that claimant's history of "only sporadic psychiatric visits" was a relevant consideration in determining that claimant does not suffer from a disabling mental disorder).

Moreover, the ALJ noted that Plaintiff had lied about her drug use until she was caught for a second time in 2006. (Tr. 14, 24). After the first incident in 2001, Plaintiff began seeing a psychiatrist, Dr. Robert Elliot, for treatment of her depression. (Tr. 14, 254). In 2005, Plaintiff continually reported to Dr. Elliot that she was not taking any unprescribed opiates. (Tr. 281-82). However, Plaintiff later admitted, only after she was arrested for driving under the influence in January 2006, that she had been stealing and taking opiates for the past year. (Tr. 14, 283). Plaintiff's lack of candor certainly supports the ALJ's finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.

The ALJ also observed that, although Plaintiff testified that she is totally disabled by depression and anxiety, she also testified that her treatment has been helpful in relieving her symptoms. (Tr. 13). Plaintiff stated that she sees a drug counselor once a week, and the therapy is very beneficial, especially with learning new coping mechanism skills. (Tr.

7

30-31). Plaintiff also testified that she has not had any mental obsessions or drug cravings in several months. (Tr. 24). Moreover, Plaintiff admitted that her prescription medication, Wellbutrin and Buspar, provide relief from her symptoms. (Tr. 36). Furthermore, Plaintiff testified that she was still trying to regain her pharmacist license, indicating her own belief that she could return to her past work. (Tr. 32).

Additionally, the ALJ noted that Plaintiff's reported daily activities are inconsistent with her complaints of disabling pain. (Tr. 13-14). *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (An ALJ may consider a Plaintiff's daily and social activities when evaluating her credibility.). Plaintiff testified that she was able to perform household chores, prepare simple meals, drive, shop, garden occasionally, attend church, visit with family members several times a week and care for her two children, ages three and seven. (Tr. 14, 29, 34-35, 183).

Finally, the ALJ found that Plaintiff's allegations of disabling symptoms were inconsistent with the medical evidence of record. (Tr. 14). The ALJ noted that Dr. Jeanne Bennett, a consultative psychological examiner, found that Plaintiff could understand, remember and carry out simple tasks and her capacity to respond appropriately to supervision, coworkers and work pressures in a work setting was not affected by her impairments. (Tr. 184). Dr. Bennett also assigned Plaintiff a Global Assessment of Functioning (GAF) score of 55. (Tr. 184). The ALJ noted that according to the *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition* (DSM-IV), a score within the 51 to 60 range applies to individuals who experience moderate symptoms or some difficulty in social, occupational or school functioning, but generally function pretty well and have some meaningful relationships. (Tr. 13). Furthermore, Plaintiff's own treating psychiatrist

8

stated that Plaintiff had a good ability to understand, remember and carry out short, simple instructions and make simple work-related decisions, and she had a fair ability to work at a consistent pace. (Tr. 233). Therefore, the ALJ found that neither the severity nor the extent of Plaintiff's reported symptoms is supported by the objective medical evidence of record. However, despite ALJ Reynolds' conclusion that Plaintiff's subjective complaint testimony was not credible, he "accorded the [Plaintiff] the benefit of the doubt" and reduced Plaintiff's RFC to incorporate limitations due to body habitus, foot pain and mental impairment. (Tr. 14).

Plaintiff does not provide the Court with any rationale to support her argument. Rather, she relies on conclusory statements, telling the Court that "[Plaintiff's] medical records, length of treatment and testimony clearly establish objective medical evidence that supports [Plaintiff's] allegations of disability." (Doc. #6-1, at 4). Despite Plaintiff's contention that the medical records clearly support her allegations of disability, Plaintiff fails to provide any citation to the record. Contrary to Plaintiff's assertions, ALJ Reynolds stated sufficient reasons for his credibility findings, which were reasonable and supported by substantial evidence. For these reasons, the Court declines to disturb the ALJ's credibility findings on appeal.

    **2.    The ALJ Did Not Substitute His Own Opinion For That of the Physicians of Record**

Plaintiff next contends that ALJ Reynolds relied upon his own opinion over that of the treating physicians of record and placed no reliance upon the opinions of Drs. Jeanne

Bennett and Robert Elliot.[1] Specifically, Plaintiff asserts that it was "remandable error" for the ALJ to reject Dr. Elliot's April 2008 opinion that Plaintiff would be unable to work for a period of one year.[2] Plaintiff's argument is unpersuasive.

"Generally, the opinions of treating physicians are given substantial, if not controlling, deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). However, such opinions do not automatically bind the ALJ, as the opinions of treating physicians are only entitled to controlling weight when they are "supported by objective medical evidence," *Jones*, 336 F.3d 469, 477 (6th Cir. 2003), and are uncontradicted by substantial evidence, *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987). If the ALJ finds that the treating physician's opinion fails to meet these two conditions, he may discredit that opinion, so long as he communicates a reasoned basis for doing so. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 441 (6th Cir. 2010) (citing *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)). "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner*, 375 F.3d at 390 (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)) (internal quotations omitted).

In this case, the ALJ rejected an April 2008 letter written by Dr. Elliot to the Social Security Administration. (Tr. 14). The letter stated in its entirety: "Crystal Adams is

---

[1] While Plaintiff refers to both Drs. Bennett and Elliot as "treating physicians," Dr. Bennett was actually a one-time psychological examiner. Furthermore, Plaintiff also asserts that the ALJ ignored the medical judgment of "Dr. C.A. Moore," but upon review of the record, the Court did not locate any treatment records from a Dr. C.A. Moore. Moreover, Plaintiff failed to provide any citation to the record. Therefore, the Court will not consider this assertion.

[2] While Plaintiff argues that the ALJ placed no reliance on Dr. Bennett's opinion, she does not allege that this was a "remandable error." However, as discussed below, the ALJ gave substantial weight to Dr. Bennett's opinion, and, therefore, Plaintiff's argument is misplaced.

currently under my medical care for the treatment of Major Depression. She is making progress in her treatment but is unable to return to work at this time because of her illness. I do anticipate she will be able to return to work in approximately one year." (Tr. 337). Plaintiff began treating with Dr. Elliot in 2001 for medication management, as a condition for getting her pharmacist license returned.

Contrary to Plaintiff's assertion, the ALJ did not commit reversible error when he rejected Dr. Elliot's April 2008 letter stating that Plaintiff was unable to return to work for approximately one year. (Tr. 337). A treating physician's opinion is only entitled to deference when it is a *medical opinion*. *See* 20 C.F.R. § 404.1527(d). When a treating physician instead submits an opinion on an issue reserved to the Commissioner–such as whether the claimant is "disabled" or "unable to work"–the opinion is not entitled to any particular weight. 20 C.F.R. § 404.1527(e); Social Security Regulation 96-5p ("Medical sources often offer opinions about whether an individual . . . is 'disabled' or 'unable to work' ... . Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance."). Because Dr. Elliot's letter indicated Plaintiff was "unable to return to work," it was properly discounted by ALJ Reynolds as an opinion on an issue reserved to the Commissioner. *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010).

Moreover, the ALJ determined that Dr. Elliot's finding of disability was inconsistent with Plaintiff's stated abilities, Dr. Elliot's own treatment notes and other medical evidence of record. (Tr. 14). The ALJ noted that Dr. Elliot's April 2008 letter was not supported by any clinical findings in the record. (Tr. 14). Indeed, the ALJ found that Dr. Elliot's determination of disability was inconsistent with his October 2007 assessment. (Tr. 14).

11

In that assessment, Dr. Elliot indicated that Plaintiff had a good ability to remember locations and work-like procedures; understand, remember and carry out short, simple instructions; make simple work-related decisions; interact appropriately with the public; ask simple questions and request assistance; get along with co-workers and peers; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; and be aware of normal hazards and take appropriate precautions. (Tr. 233-34). The ALJ also noted that while Dr. Elliot's assessment tried to downplay Plaintiff's long history of drug dependence, his treatment notes revealed that Plaintiff's withdrawal from Lortab and Soma dependency had resulted in increased anxiety in 2001. (Tr. 254). Furthermore, Dr. Elliot's records note that in 2005 Plaintiff was doing well and her depression was well-controlled with medication; however, as stated above, this was during the same time that she began using again unbeknownst to Dr. Elliot. (Tr. 281-82). The ALJ concluded that it is Plaintiff's past drug abuse, and not any current physical or mental impairment, that is the primary roadblock to her return to work. (Tr. 14).

The ALJ also observed that Dr. Elliot's statement of disability was inconsistent with the September 2006 evaluation of one-time psychological examiner Dr. Bennett. Dr. Bennett found that Plaintiff had no limitations in her ability to understand, remember and carry out instructions toward the performance of simple, repetitive tasks; no limitation in her capacity to respond appropriately to supervisors, coworkers and work pressures in a work setting; and had a slight limitation in her ability to sustain attention and concentration for simple repetitive tasks.[3] (Tr. 184). Dr. Bennett also estimated Plaintiff's global intellectual

---

[3] Commissioner correctly points out that Dr. Bennett also assessed a marked-to-moderate limitation in Plaintiff's ability to tolerate stress and pressure of employment. (Tr. 183). However,

functioning was in the average to high average range and her prognosis for improvement was good with mental health intervention. (Tr. 183). Furthermore, the treatment notes from Plaintiff's drug counselor at the Morton Center continually indicated that Plaintiff was making progress in her group therapy sessions. *See e.g.*, (Tr. 488, 491, 493).

Once again, Plaintiff does not provide the Court with any rationale to support her argument and fails to cite to any portion of the record. For all of these reasons, the Court finds that the ALJ did not substitute his own opinion for that of the physicians of record, and substantial evidence supports the ALJ's determination to give little weight to Dr. Elliot's finding of disability.

> 3.  **The Hypothetical Posed to the VE Accurately Reflected the Limitations Contained in Plaintiff's RFC**

Plaintiff next contends the Commissioner did not sustain his burden at Step 5 of the sequential evaluation process because the hypothetical posed to the VE did not accurately portray the Plaintiff's mental status. However, Plaintiff fails to articulate what mental limitations the ALJ allegedly disregarded or in what manner the hypothetical did not accurately portray Plaintiff's mental status. In failing to direct this Court's attention to the mental limitations the ALJ allegedly disregarded, or in what manner the hypothetical did not accurately portray Plaintiff's mental status, Plaintiff's argument lacks the specificity required by this Court on appeal. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). When a plaintiff fails to offer any particularized argument to support her assertion, this Court will not "formulate arguments on the Plaintiff's behalf" or engage in an

---

this limitation is contradicted by her opinion that Plaintiff had no limitation in her capacity respond appropriately to work pressures in a work setting. (Tr. 180-84). Therefore, the ALJ had no duty to adopt this limitation.

"open-ended review of the entirety of the administrative record to determine ... whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and ... whether the Commissioner sufficiently accounted for this evidence." *Id.* Rather, the Court limits its consideration to the particular points that Plaintiff appears to raise in her motion for summary judgment. *See id.*

A VE's testimony in response to a hypothetical question will provide substantial evidence of claimant's RFC to perform work in the national economy where the question posed accurately reflected the claimant's physical and mental impairments. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (though an ALJ need not list a claimant's medical conditions, the hypothetical should provide the vocational expert with the ALJ's assessment of what the claimant "can and cannot do"). It is well established, however, that an ALJ need only include those restrictions which enjoy support when assessed against the backdrop of the entire record of objective medical evidence. *Stanley v. Sec'y Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994) (in formulating a hypothetical question, the ALJ need only incorporate those limitations which he has deemed credible).

As stated above, the ALJ determined that Plaintiff had the RFC to perform a range of heavy work as defined in 20 C.F.R. § 404.1567(c). (Tr. 12). However, the Plaintiff requires a sit/stand option with no prolonged standing or walking in excess of one hour without interruption. The ALJ also found that Plaintiff is unable to climb ropes, ladders or scaffolds secondary to body habitus. (Tr. 12). Furthermore, Plaintiff cannot work around industrial hazards and requires work without frequent changes in work routine. (Tr. 12). Moreover, the ALJ found that Plaintiff is limited to no more than occasional interaction

(interaction defined as conflict resolution, problem solving or exchanges involving more than casual or impersonal contact) with coworkers, supervisors or the general public. (Tr. 12)  Additionally, Plaintiff cannot perform work requiring detailed or complex problem solving, independent planning or setting of goals.  (Tr. 14).

In the hypothetical posed to the VE, the ALJ asked the VE to consider an individual with primarily non-exertional limitations, including: no climbing of ropes, ladders or scaffolds; no work around industrial hazards; no frequent changes in work routines; no requirement for detailed or complex problem solving, independent planning or the setting of goals; only occasional interaction with coworkers, supervisors or the general public; and a sit-stand option.  (Tr. 43-45).  These limitations were consistent with the ALJ's RFC determination. (Tr. 12).  The VE testified that Plaintiff could perform bench assembly jobs (311,000 available nationally) and office helper positions (1,450,000 nationally).  (Tr. 45). As Plaintiff has failed to identify any mental limitations that the ALJ omitted from the hypothetical, the ALJ did not err in accepting and relying upon the testimony of the VE concerning the availability of suitable jobs in the national economy.

### III. CONCLUSION

Therefore, for the reasons stated herein, the Court concludes that the ALJ's RFC determination and his finding that Plaintiff was not disabled for purposes of the Social Security Act is supported by substantial evidence.  Although the record contains differing opinions as to the extent of Plaintiff's exertional and non-exertional limitations, the Court finds that the ALJ properly performed his duty as trier of fact in resolving the conflicts in evidence.  *See Richardson v. Perales*, 402 U.S. 389, 399 (1971).  Accordingly, for the reasons stated,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 6) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. # 9) is hereby **GRANTED**; and

4. A Judgment affirming this matter will be entered contemporaneously herewith.

This 12th day of April, 2011.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\London\6-10-219 Adams MOO.wpd

16